UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| VA VANG, | Case No. 25-cv-2836 (LMP/JFD) |
| Petitioner, | |
| v. | |
| PAMELA JO BONDI, TODD BLANCHE, KRISTI NOEM, PETER BERG, and WARDEN OF FREEBORN COUNTY DETENTION CENTER,[1] | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| Respondents. | |

Nicholas Ratkowski, **Ratkowski Law PLLC, St. Paul, MN**, for Petitioner.[2]

Justin M. Page and Ana H. Voss, **United States Attorney's Office, Minneapolis, MN**, for Respondents Pamela Jo Bondi, Todd Blanche, Kristi Noem, and Peter Berg.

Petitioner Va Vang ("Vang") brings a petition for a writ of habeas corpus, alleging that his immigration detention violates the Due Process Clause of the Fifth Amendment

---

[1]   Respondents' names are automatically substituted to those of current officeholders under Fed. R. Civ. P. 25(d).

[2]   Mr. Ratkowski agreed to represent Vang pro bono through the Federal Bar Association's Pro Se Project. The Court thanks Mr. Ratkowski for his quality representation.

and federal regulations. *See generally* ECF No. 1. The Government[3] opposes the petition. ECF Nos. 6, 14. For the following reasons, the petition is denied.

## BACKGROUND

Vang is a native and citizen of Laos who has lived in the United States since 1976. ECF No. 7 ¶ 4. In 2001, Vang was convicted in Wisconsin state court of various domestic violence charges. *Id.* ¶ 5; ECF No. 7-2 at 22–35. While incarcerated in Wisconsin, the Department of Homeland Security ("DHS") commenced removal proceedings against Vang. ECF No. 7-1 at 3. On August 5, 2004, an immigration judge ordered Vang's removal to Laos. *Id.* Vang was later extradited to California, where he was convicted in 2006 of kidnapping, assault, and rape charges arising from a January 1994 incident. ECF No. 7-2 at 1–19.

After completing his prison sentence in California in 2009, Vang was paroled into the custody of U.S. Immigration and Customs Enforcement ("ICE") to effectuate his removal. ECF No. 7 ¶ 8. However, Vang's removal to Laos was stymied by the fact that Laos historically does not accept its nationals ordered removed from the United States. *See* ECF No. 12 at 16 (ICE determining in November 2024 that Laos is "uncooperative" in "accepting the return of their nationals"). ICE determined that there was no significant likelihood that Vang would be removed to Laos in the reasonably foreseeable future. ECF

---

[3] When used in this Order, "Government" refers to the federal officials named as respondents: Pamela Jo Bondi, Todd Blanche, Kristi Noem, and Peter Berg. The Warden of the Freeborn County Detention Center has not participated in these proceedings.

No. 7 ¶ 8.  Accordingly, on August 4, 2009, ICE released Vang into the community on an Order of Supervision, which included various conditions for release.  ECF No. 7-4.

By all accounts, since his release into the community in August 2009, Vang has remained law-abiding and has complied with the conditions of his Order of Supervision, including assisting with efforts to procure travel documents when requested.  But on June 6, 2025, Vang was arrested and detained by DHS.  ECF No. 7 ¶ 9.  Vang was provided written notice that his Order of Supervision had been "revoked" because "ICE is in the process of obtaining a travel document from Laos and there is a significant likelihood of [Vang's] removal in the reasonably foreseeable future."  ECF No. 7-5 at 1.  Vang has been detained at the Freeborn County Adult Detention Center in Albert Lea, Minnesota, since his arrest.  ECF No. 1 ¶¶ 1, 6.

On July 14, 2025, Vang brought a pro se petition for a writ of habeas corpus.  *See generally id.*  Vang does not challenge the validity of his removal order nor DHS's decision to attempt to execute Vang's removal order.  *Id.* ¶ 26.  Rather, Vang alleges that by revoking his Order of Supervision and re-detaining him, DHS violated Vang's due process rights and its own regulations.  *See id.* ¶¶ 23–33.

The Court ordered the Government to answer the petition no later than July 24, 2025, with any reply by Vang due by August 4, 2025.  ECF No. 3.  After receiving that briefing, the Court issued a second show cause order on August 4, 2025, requesting additional information from the Government.  ECF No. 13.  On August 7, 2025, the Government stated that the Government of Laos had issued a travel document for Vang, and that Vang's removal was scheduled for this month.  *See* ECF No. 14-1.  The

3

Government did not answer the questions posed by the Court in the second show cause order, asserting that the information sought by the Court was "moot." ECF No. 14 at 2 n.5.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001).

Liberally construing his pro se petition, *see Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024), Vang offers three reasons why he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3). First, Vang contends that DHS violated its own regulations by failing to provide adequate notice that his Order of Supervision was revoked. ECF No. 1 ¶¶ 18, 20. Second, Vang contends that DHS violated its own regulations because it re-detained him without sufficiently demonstrating changed circumstances that his removal is significantly likely in the reasonably foreseeable future. *Id.* ¶¶ 19–20, 25–26, 31. Third, Vang argues that his detention violates the Due Process Clause of the Fifth Amendment because it is not significantly likely that he will be removed to Laos in the reasonably foreseeable future. *Id.* ¶¶ 19–20, 25–26, 31. The Government asserts that Vang's detention complies with federal regulations and the strictures of due process. *See* ECF No. 6.

4

I.      **Regulatory Claims**

Not all noncitizens[4] ordered removed from the United States can actually be removed from the United States. That is because some countries, like Vang's home country of Laos, have historically "refused to repatriate"—in other words, issue travel documents to and accept—their nationals ordered removed from the United States. *See Khotesouvan v. Morones*, 386 F.3d 1298, 1299 (9th Cir. 2004). ICE cannot detain such noncitizens indefinitely. *See Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001). Accordingly, federal regulations require ICE to release a noncitizen ordered removed from the United States on an Order of Supervision if there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

Once ICE releases a noncitizen on an Order of Supervision, ICE's ability to re-detain that noncitizen is constrained by 8 C.F.R. § 241.13(i). Relevant here, ICE may re-detain a noncitizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). If ICE elects to revoke a noncitizen's release under 8 C.F.R. § 241.13(i)(2), then the noncitizen must "be notified of the reasons for revocation of his or her release," followed by "an initial informal

---

[4]     This Order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.*

    a.    **Adequate Notification**

Vang first contends that he was not given adequate notification of the reasons for the revocation of his release. ECF No. 1 ¶¶ 18, 20. ICE's regulations require that when notified of a release revocation, the "reasons" for that revocation must be stated in the notification. 8 C.F.R. § 241.13(i)(3). Here, Vang was provided with a reason why ICE was revoking his release: ICE was in the process of procuring a travel document for him from Laos. ECF No. 7-5 at 1. That satisfies the regulation's requirement that Vang "be notified of the reasons for revocation of his . . . release." 8 C.F.R. § 241.13(i)(3). And it distinguishes this case from other cases in which ICE cited no reasons for revocation in its notification letter, but instead simply parroted the regulatory text. *See Sarail A. v. Bondi*, No. 25-cv-2144 (ECT/JFD), ECF No. 9 at 5 (D. Minn. June 17, 2025). Vang is not entitled to habeas relief on this claim.

    b.    **Whether ICE Demonstrated Changed Circumstances**

"ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20

6

(1st Cir. 2023).  Once ICE makes that determination, "the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620.  Those factors include:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f).

The Government at several points argues that it is Vang's burden to show no significant likelihood of removal in the reasonably foreseeable future, but they get things backwards.  Although Vang has the ultimate burden of proving entitlement to habeas relief, *see Walker v. Johnston*, 312 U.S. 275, 286 (1941), the regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future, *see Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed."); *Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 n.2 (D. Mass. June 20, 2025).  Absent specific statutory or regulatory language on the allocation of the burden of proof (as is the case in 8 C.F.R. § 241.13(i)(2)), the Court is guided by the "default rule" that the burden falls on the party who "generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." *Schaffer*

7

*ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting McCormick on Evidence § 337 (5th ed. 1999)).  Here, it is ICE that "seeks to change the present state of affairs" by re-detaining Vang, so the Court evaluates whether the Government has met that burden.

Recall first that Vang's notification letter explained that circumstances had changed because ICE was "in the process of obtaining a travel document from Laos." ECF No. 7-5 at 1.  That bare fact tells the Court nothing about whether there is a "significant likelihood" that Vang "may be removed in the reasonably foreseeable future."[5]  8 C.F.R. § 241.13(i)(2).  That is particularly true for a Laotian national like Vang, given that Laos has historically *refused* to issue travel documents for its nationals ordered removed from the United States.  ECF No. 12 at 16.  If attempting to obtain a travel document for Vang is an exercise in futility, then it cannot constitute changed circumstances.  *See Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (explaining that a request for a travel document did not constitute changed circumstances because there was

---

[5] It is not even clear if that explanation was true at the time it was issued.  On June 5, 2025, ICE informed Vang that "ICE is in the process of obtaining a travel document from Laos."  ECF No. 7-5 at 1.  But the Government concedes that no request for a travel document for Vang was submitted to the Government of Laos until June 24, 2025—19 days after Vang was detained.  ECF No. 7 ¶ 10.  The representation that "ICE is in the process of obtaining a travel document from Laos" logically suggests that ICE had already requested a travel document for Vang, which evidently did not happen here.  The Government offers no explanation for their 19-day delay in requesting a travel document, nor do they assert there were any steps taken toward obtaining a travel document for Vang before June 24, 2025.  In the Court's view, ICE strains the boundaries of its authority when it detains a noncitizen under 8 C.F.R. § 241.13(i)(2), asserts that a travel document is being obtained, and then waits nearly three weeks before making affirmative efforts toward actually obtaining the travel document.

no evidence that submission of the request had any "real effect" to obtain a travel document).

Perhaps sensing the thin explanation provided in Vang's release-revocation notice, the Government now offers the testimony of ICE Supervisory Detention and Deportation Officer Richard N. Pryd Jr. ("SDDO Pryd"), who explains that "[t]he Government of Laos has been cooperative with travel document issuance," and that since January 2025, ICE officials in Minnesota have successfully removed six Laotian nationals to Laos.  ECF No. 7 ¶ 11.  This evidence omits critical context, such as "the history of [ICE's] efforts to remove [noncitizens] to the country in question" and "the reasonably foreseeable results of those efforts."  8 C.F.R. § 241.13(f).  The Government does not explain how long it took for those six Laotians to receive their travel documents, and, most glaringly, the Government does not disclose the total number of travel document requests made to Laos in 2025, let alone compare those numbers to the number of travel document requests made to and granted by Laos in previous years.  *See Nguyen*, 2025 WL 1725791, at *4 (finding fault with similarly paltry evidence of removals by ICE); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *5 (E.D. Cal. July 16, 2025) (same); *Phan v. Becerra*, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) (same); *cf. Liu*, 2025 WL 1696526, at *2 (noting that ICE's "bare assertion of an increase" in removals to a country that historically refused to accept removed noncitizens did not constitute "changed circumstances" because it "did not make [the] petitioner's removal any more likely without addressing the particular obstacles to the many past failed attempts to remove him, namely the lack of proper documentation for [the] petitioner").

SDDO Pryd's other testimony similarly falls short of demonstrating changed circumstances. SDDO Pryd states that Laos "has not refused to issue a travel document for [Vang] or denied [Enforcement and Removal Operations] St. Paul's request for [Vang's] travel document." ECF No. 7 ¶ 11. Notably, this testimony is phrased in the negative: although it tells the Court what has *not* happened, it tells the Court nothing about the "reasonably foreseeable results" of what *will* happen. 8 C.F.R. § 241.13(f); *see Nguyen*, 2025 WL 1725791, at *4 (finding similar evidence did not constitute changed circumstances because there was no evidence as to "whether [the home country] has even acknowledged receipt of the request or otherwise responded to [the noncitizen's] request, or the anticipated wait time for a response from [the home country]); *Liu*, 2025 WL 1696526, at *3 (rejecting travel document request as changed circumstance because "respondents have not provided any details about why that documentation could not be obtained in the past, nor have they attempted to show why obtaining that particular documentation is more likely this time around"); *Phan*, 2025 WL 1993735, at *5 (same).

The same goes for SDDO Pryd's entirely conclusory statement that Vang is "similarly situated" to the six Laotians removed by ICE officials in Minnesota this year. ECF No. 7 ¶ 11. The Court has no clue how Vang is "similarly situated" to those six Laotians because the Government has offered no evidence to substantiate that claim other than SDDO Pryd's conclusory say-so. The Court need not credit such assertions. *See Nguyen*, 2025 WL 1725791, at *3 (rejecting "conclusory" assertions of changed circumstances).

Given the scant evidence of changed circumstances provided with the Government's response brief, the Court issued a second show cause order on August 4, 2025, directing the Government to provide additional information that would allow the Court to evaluate its assertion that changed circumstances existed. ECF No. 13. Three days later, the Government filed a second declaration by SDDO Pryd, which states that the Government of Laos issued a travel document for Vang on August 4, 2025, and that Vang is scheduled to be removed from the United States in August 2025. ECF No. 14-1.

Laos's issuance of a travel document constitutes changed circumstances that make removal significantly likely in the reasonably foreseeable future. *See Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540, at *5 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019); *Kamara v. Oddo*, No. 3:24-cv-2249, 2025 WL 310131, at *3 (M.D. Pa. Jan. 27, 2025); *Martinez v. Field Off. Dir.*, No. 3:22-cv-670, 2022 WL 17903490, at *3 (N.D. Ohio Dec. 23, 2022). Indeed, Vang identifies no other barriers to his removal at this point. Accordingly, the Court finds that the Government has met their burden to show changed circumstances under 8 C.F.R. § 241.13(i)(2).

Although Vang does not contest that the Government has met their burden to show changed circumstances, he asserts that this case falls within the capable-of-repetition-yet-evading-review exception to mootness. ECF No. 16 at 4. As an initial matter, this case is not moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91

11

(2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). But Vang still has a "legally cognizable interest" in the outcome of this case; he remains in immigration detention, and he continues to contest the legality of his detention. *See* ECF No. 16. There accordingly remains an "actual controversy about [Vang's] particular legal rights." *Already, LLC*, 568 U.S. at 91 (citation omitted). Simply because Vang has lost on the merits of his claim does not mean that this case has become moot. *See Chafin v. Chafin*, 568 U.S. 165, 174 (2013) (discussing where a party similarly "confuse[d] mootness with the merits").

Even if this case were moot, it cannot be saved by the capable-of-repetition-yet-evading-review exception. That exception applies if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018) (citation omitted). Here, the challenged action is ICE's decision to revoke Vang's Order of Supervision and re-detain him. But Vang has not shown a "reasonable expectation" that ICE will release him on another Order of Supervision and then revoke that second Order of Supervision and re-detain him again. *Id.* Indeed, by all accounts, ICE intends to remove Vang to Laos imminently. *See* ECF No. 14-1 ¶ 5. Accordingly, Vang has not met his burden to invoke the capable-of-repetition-yet-evading-review exception to mootness. *See Abdurrahman*, 903 F.3d at 817 (explaining that it is the burden of the party asserting jurisdiction to show entitlement to a mootness exception). Accordingly, the Court dismisses both of Vang's regulatory claims.

## II. Constitutional Claim

Relying on *Zadvydas*, Vang next asserts that his detention violates the Due Process Clause of the Fifth Amendment. ECF No. 1 ¶ 23. Indefinite immigration detention raises serious due process concerns. *Zadvydas*, 533 U.S. at 690. Some "limited period" of detention prior to removal is constitutionally permissible, however, *Demore v. Kim*, 538 U.S. 510, 526 (2003), and a noncitizen's detention presumptively comports with due process if it does not exceed six months, *Zadvydas*, 533 U.S. at 701. After such a period, and once the noncitizen provides evidence that there is no significant likelihood of his removal from the United States in the reasonably foreseeable future, the government must respond with "evidence sufficient to rebut that showing." *Id.*

The parties dispute whether Vang's detention has exceeded six months. ECF No. 6 at 13; ECF No. 11 at 7. But even assuming that Vang has been detained for more than six months, he has not rebutted the Government's assertion that his removal is significantly likely in the reasonably foreseeable future, given that Laos has now issued a travel document for Vang and his removal is scheduled for this month. *See Moses v. Lynch*, No. 15-cv-4168 (PAM/JJK), 2016 WL 2636352, at *3 (D. Minn. Apr. 12, 2016), *report and recommendation adopted*, 2016 WL 2596020 (D. Minn. May 5, 2016); *Kamara*, 2025 WL 310131, at *3. Vang's constitutional claim is also dismissed.[6]

---

[6] Vang's briefing raises several other arguments, including that Vang's detention violates procedural due process under the *Mathews v. Eldridge* balancing test, and that Vang's detention is impermissibly punitive. ECF No. 11 at 11–14; ECF No. 16 at 2–3. Because these theories were not pleaded in the petition, the Court will not address them. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (explaining that a complaint cannot be amended through briefing).

13

## **CONCLUSION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Vang's Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 11, 2025                                *s/Laura M. Provinzino*
                                                                        Laura M. Provinzino
                                                                        United States District Judge